IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

THOMAS ARTIAGA,

                        Plaintiff,                    Case No. 3:04 CV 7121

            -vs-
                                                      MEMORANDUM OPINION
CHRISTINE MONEY, WARDEN,                                  AND   ORDER

                        Defendant.
KATZ, J.

## I.  Introduction

On March 10, 2004, Thomas P. Artiaga, *pro se*, filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254, challenging the constitutionality of his convictions in Ottawa County, Ohio. (Doc. No. 1). Artiaga moved to amend his habeas petition on February 25, 2005, and April 8, 2005. (Doc. Nos. 29 and 30). The Magistrate Judge denied Artiaga leave to amend because amendment would be futile. (Doc. No. 31). Artiaga then moved for reconsideration of the denials of his motions to amend. (Doc. Nos. 33 & 35). The Magistrate denied Artiaga's motions for reconsideration on March 31, 2006, (Doc. No. 39), to which Artiaga now objects, (Doc. No. 40). In accordance with *Hill v. Duriron Co*., 656 F.2d 1208, 1213 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) and (C), this Court has made a *de novo* determination of the Magistrate's findings to which Artiaga objects and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1)(C).

Also before the Court are Artiaga's Motion to Dismiss Respondent's Response to Petitioner's Objections and/or Motion to Strike Respondent's Response (Doc. No. 45) and his Motion to Strike Respondent's Supplemental Response (Doc. No. 47), which are denied.

## II.  Procedural and Factual Background

The evidence surrounding Artiaga's conviction was summarized by the state appellate court:

> On November 20, 2000, [Artiaga] was indicted on five counts: one count of domestic violence; one count of contributing to the delinquency of a minor; one count of gross sexual imposition; one count of attempted rape; and one count of attempted sexual battery. All counts involved [Artiaga's] daughter who was less than thirteen years old. [Artiaga] plead not guilty on November 22, 2000.

> On April 3, 2001, a hearing on a plea agreement was held. [Artiaga], represented by retained counsel, pled guilty to one count of domestic violence, a misdemeanor of the first degree; one count of contributing to the delinquency of a minor, a misdemeanor of the first degree; and a revised count of attempted gross sexual imposition, a felony of the fourth degree. The state dismissed the other counts. The [Ottawa County] trial court informed [Artiaga] of his constitutional rights, the penalties for each count, and the possible sentences which could be imposed for each count. [Artiaga] read and signed a plea agreement which outlined his rights and the sentencing parameters of each offense. At this hearing, [Artiaga] denied under oath that any promise or threats had been made to him in order to secure his guilty plea. [Artiaga's] trial counsel, an experienced criminal defense attorney, stated at the plea hearing that he had gone through the plea agreement with [Artiaga] "line by line." The trial court questioned [Artiaga] regarding the written plea agreement and [Artiaga] verbally acknowledged that his guilty plea was a complete admission of his guilt. [Artiaga] also indicated that he was satisfied with the services of his attorney.

> On June 28, 2001, the sentencing hearing was held. Prior to the hearing, an in-chambers hearing was held between [Artiaga's] trial counsel, the state's attorneys and the trial judge. The trial judge, prompted by letters from the child victim about her recantation of the allegations, specifically stated to [Artiaga's] trial counsel that if [Artiaga's] expectations were something other than prison, that the trial judge would let [Artiaga] withdraw his plea. [Artiaga's] trial counsel stated that [Artiaga's] expectations were realistic based upon their conversations.

> The sentencing hearing was then held. The trial court sentenced [Artiaga] to a term of eighteen months on the attempted gross sexual imposition count and six months on each of the misdemeanor charges to be served concurrently with the eighteen months on the attempted gross sexual imposition count. At the hearing, [Artiaga] was also found to be a sexual predator.

2

(Doc. No. 15, Ex. 13). Artiaga had been previously convicted of sexual child abuse in Lucas County, Ohio, and was on community control for that Lucas County sex offense when he committed the instant offenses in Ottawa County to which he pled guilty. (Doc. No. 15, Ex. 4; Doc. No. 17, pp. 2, 6).

On August 24, 2001, Artiaga filed a motion to withdraw his guilty plea. (Doc. No. 15, Ex. 8). The trial court denied this motion after holding a hearing. (Doc. No. 15, Ex. 10). Artiaga, represented by new counsel, appealed to the Ottawa County Court of Appeals, which affirmed the judgment of the trial court. (Doc. No. 15, Ex. 13). Artiaga, *pro se*, appealed to the Ohio Supreme Court, which dismissed his appeal on March 12, 2003. (Doc. No. 15, Ex. 16). Earlier, on December 2, 2002, Artiaga, *pro se*, filed a motion for leave to file a delayed direct appeal of his convictions. (Doc. No. 15, Ex. 17). The state court of appeals denied the motion on February 26, 2003. (Doc. No. 15, Ex. 19). Again, *pro se*, Artiaga appealed to the Ohio Supreme Court, which dismissed his appeal on July 2, 2003. (Doc. No. 15, Ex. 21).

In his original application for federal habeas review, Artiaga raised four grounds: (1) abuse of judicial discretion to refuse to allow withdrawal of guilty plea; (2) deprivation of effective assistance of trial counsel; (3) denial of procedural due process; and (4) error by state court of appeals in denying his application for leave to file delayed appeal. (Doc. No. 1-1, p. 8).

Artiaga desires to amend his habeas petition to challenge the constitutionality of his sentence ordered by the Ottawa County court. Artiaga asserts that portions of Ohio's sentencing statutes by which he was sentenced were later found unconstitutional in *State v. Bruce*, 824 N.E.2d 609, 612 (Ohio Ct. App. 2005), *aff'd in part and rev'd in part sub nom In re Ohio Crim. Sentencing Statutes Cases*, 2006 Ohio LEXIS 1161 (May 3, 2006), and in *State v. Foster*, 845

3

N.E.2d 470, 488-497 (Ohio 2006). In *Foster*, the Ohio Supreme Court resolved a split in the appellate courts regarding application of *Blakely v. Washington*, 542 U.S. 296 (2004), to Ohio's statutory sentencing scheme by declaring various sections of Ohio's sentencing statutes unconstitutional, and stating its holding would apply to cases on direct review. *Foster*, 845 N.E.2d at 488-497, 499. *Blakely*, decided after Artiaga's original habeas petition, holds that a judge may not "inflict[] punishment that the jury's verdict alone does not allow," because in such case "the jury has not found all the facts 'which the law makes essential to the punishment.'" *Blakely*, 542 U.S. at 303-04 (quoting 1 J. Bishop, Criminal Procedure § 87, at 55 (2d ed. 1872)). The Court further held that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Id.* at 310. Artiaga asserts he should not have received the maximum or consecutive sentences for his Ottawa County offenses because the findings used to sentence him were "never presented to nor found to be true beyond a reasonable doubt by a jury," nor did he stipulate to them. *See* (Doc. No. 29, ¶¶ 4-8).

Artiaga provides the following explanation for why he should be allowed to amend his habeas petition to add *Blakely*-related claims:

> Because the State continues to hold petitioner's sentence to be valid, even when Ohio case law based upon . . . *Blakely*[] ha[s] determined portions of Ohio's sentencing statutes/rules are unconstitutional, petitioner is being denied Due process, Equal protection and procedural due process, and his case should be reversed and remanded for further consideration, in light of *Bruce* and *Blakely*.

(Doc. No. 29, ¶ 14). He also explains that:

> Where the State continues to enforce unconstitutional sentencing laws and/or rules, which resulted in petitioner receiving a longer sentence than his sentence would've been absent a 6th Amend[ment] . . . violation[,] [p]etitioner is denied his due

4

process rights under the [Fifth, Sixth, and Fourteenth] [a]mend[ments] and under []
Const. Art[.] I § 2, 10 and 16.

*Id*. at ¶ 5.

### A. *Artiaga's Motion for Reconsideration*

After the Magistrate denied Artiaga's motions to amend on grounds that amendment
would be futile – since *Blakely* cannot apply retroactively to Artiaga's state court proceedings –
Artiaga moved for reconsideration, making three arguments, (Doc. Nos. 33, 35). First, he asserted
his claims are exhausted, though he does not explain how this helps him. Second, he asserted his
case was not final for the following reasons: he was never permitted to file a direct appeal; the
Ottawa County trial court lacked subject-matter jurisdiction; a Sixth Amendment *Blakely*-type
violation occurred in the state trial court proceedings; and the state court's decision was tainted by
due process violations. Third, Artiaga moved for reconsideration believing his claim of actual
innocence: (a) provides an exception to any procedural bar; and (b) entitles him to amend his
petition adding a *Blakely* claim under *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). (Doc.
Nos. 33, 35).  In connection with this latter argument, Artiaga claims that because respondent did
not challenge the actual innocence claim in his traverse, respondent therefore admitted to
Artiaga's actual innocence. (Doc. No. 33.)

### B. *Magistrate's Order Denying Reconsideration of Denial of Motion to Amend*

In his order denying Artiaga's motion for reconsideration, the Magistrate concluded that
Artiaga's motion hinges on his actual innocence argument and that his claim of factual innocence
fails because he did not present new evidence, since the victim's recantation was considered by
the state court. (Doc. No. 39). The Magistrate also found that Artiaga does not state a claim of

5

actual innocence by challenging the validity of his guilty plea. *Id*. Next, the Magistrate concluded that the Court is only concerned with federal review of Artiaga's convictions from Ottawa County and that Artiaga's Ottawa County convictions became final in 2003. *Id*. The Magistrate's opinion did not address Artiaga's other claims: whether the Ottawa County trial court lacked subject-matter jurisdiction; whether *Blakely* and due process violations render the state court proceedings not final; and whether *Deitz v. Money* permits Artiaga to amend his petition.

### III.  Petitioner's Objections

Artiaga raised seven objections to the Magistrate's order denying his motion for reconsideration. (Doc. No. 40). The Court reviews each of them *de novo*. *Hill*, 656 F.2d at 1214.

#### A.  Petitioner's First Objection

Artiaga first objects to the Magistrate's conclusion that his *petition* is based on actual innocence and claims, rather, that he is "permitted to overcome procedural bars and Amend in *Blakely* issues under *Deitz* . . . when he demonstrates Actual Innocence." (Doc. No. 40, p. 2).

*Deitz* holds that a federal court cannot address a habeas petitioner's federal constitutional claim unless the petitioner has "first fairly presented the claim to the state courts." *Deitz,* 391 F.3d at 808. "A federal court is also barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to a procedural defect or waiver." *Id*. In addition, *Deitz* holds that in order to receive federal habeas review of a waived claim, "a petitioner must demonstrate either (1) cause to excuse the waiver and prejudice to his defense or (2) actual innocence." *Id*. (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

In *Deitz*, the Court of Appeals was asked to determine whether petitioner's claim was barred by petitioner's failure to observe a state procedural rule, i.e., failure to file a direct appeal. *Id*. at 807-08. The court concluded the petitioner had alleged sufficient facts that could establish

cause for his failure to file a direct appeal: ineffective assistance of counsel and his attorney's failure to file a requested appeal. *Id*. at 811. The court ruled that since petitioner's claim of ineffective assistance of counsel was not procedurally defaulted, since he had alleged facts that could establish cause for his failure to file a direct appeal, and since prejudice would be presumed, the petitioner was entitled to habeas relief if he could in fact prove that he asked his attorney to file a timely appeal and that the attorney failed to do so. *Id*. Finally, the court explained that in remanding the case to the district court to rule on the merits of the ineffective-assistance-of-counsel claim, it did not require that claim to be exhausted in the state courts because 28 U.S.C. § 2254(b)(1)(B)(i) excuses the exhaustion requirement when there is an absence of available state corrective process and petitioner's state will no longer hear his appeals or post-conviction petitions. *Id*. at 812.

But here, Artiaga does not seek to amend his petition to achieve review of a claim that he has waived or on which he had procedurally defaulted. Rather, he seeks to add a claim based on *Blakely*, which does not apply retroactively to cases on collateral review. *See Humphress v. United States*, 398 F.3d, 855, 860 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 199 (2005); *see also State v. Wilson*, 2006 Ohio App. LEXIS 2561, at *11 (Ohio Ct. App. June 1, 2006) (The Ohio Supreme Court's opinion in *Foster* applying *Blakely* to Ohio's sentencing scheme "only applies to those cases pending upon direct review or not yet final as of the date that the *Foster* decision was decided," i.e., February 27, 2006).

*Deitz* does not stand for the proposition that a showing of actual innocence abrogates the doctrine that *Blakely* and its progeny do not apply on collateral review to cases that were final when *Blakely* and its progeny were decided. *Blakely*'s non-retroactivity rule is not a procedural bar but rather a rule of applicability governing new rules of criminal law.

7

A claim of actual innocence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). However, this actual innocence "gateway" has limited application. *See Schulp v. Delo*, 513 U.S. 298, 321-22 (1995) (explaining that the fundamental-miscarriage-of-justice exception was intended to remain rare and only be applied in the extraordinary case); *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (noting that the exception may be used to reach the merits of: "(a) *successive claims* that raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised, which constitute an *abuse of the writ*; or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims") (emphasis in original). These bars to habeas petitions are premised on the Court's concerns for the "'finality, comity, and conservation of scarce judicial resources.'" *House v. Bell*, No. 04-8990, 2006 U.S. LEXIS 4675, at *33 (June 12, 2006) (quoting *Schulp*, 513 U.S. at 324).

These procedural bars are different from the doctrine of nonretroactivity. In *Teague v. Lane*, 489 U.S. 288 (1989), a plurality of the Supreme Court announced a new approach to the retroactive application in habeas corpus proceedings of newly announced legal rules. *Teague* holds that new rules of criminal procedure generally may not be applied retroactively to cases on collateral review. *Id.* at 310. However, the Court recognized two exceptions to this general rule. A new rule of criminal procedure may be applied retroactively to cases on collateral review if: (1) the rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"; or (2) the new rule is a "watershed" rule of criminal procedure requiring the observance of procedures that are "implicit in the concept of ordered liberty." *Id.* at 311 (internal quotations omitted). In *Oswald v. Jones*, the court observed that "[a]ll

8

of the courts of appeals that have examined the issue have determined that *Blakely* enunciated a new rule of procedure . . . [which] does not fall within the two recognized exceptions to the *Teague* doctrine." No. 1:05-cv-753, 2005 U.S. Dist. LEXIS 38465 at *6-7 (W.D. Mich. Dec. 16, 2005) (citing *Humphress v. United States*, 398 F.3d 855, 862 (6th Cir. 2005)). Furthermore, Congress codified and expanded the *Teague* doctrine in the Antiterrorism and Effective Death Penalty Act of 1996, "narrow[ing] the range of relief that is available in habeas corpus proceedings." Randy Hertz, James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 25.1 (5th ed. 2005). This Court rejects the unsupported theory that because the fundamental-miscarriage-of-justice exception can overcome select procedural bars the same exception should similarly override the well-grounded *Teague* doctrine barring retroactive application of a new rule.

Moreover, *Deitz* holds that actual innocence can be used to assert an *existing* Constitutional claim that would have been waived or suffered a procedural defect; but here, Artiaga would have his actual innocence create the Constitutional claim he wishes to raise. *Deitz* found that a showing of actual innocence was reason to address on the merits a constitutional claim that, without doubt and irrespective of any showing of actual innocence, existed, but that the petitioner was barred from asserting due to waiver or the operation of the procedural rules governing habeas proceedings. Here, by contrast, unless actual innocence abrogates the rule that *Blakely* does not apply retroactively, Artiaga *has no Sixth Amendment claim* at all. Artiaga therefore seeks to use a showing of actual innocence for a purpose different from its use in *Deitz*. For these reasons, *Deitz* is inapposite to the case at bar. Artiaga has cited to no case supporting his position, and the Court has found none.

Additionally, because the case law holds – without qualification – that *Blakely* and *Foster* do not apply on collateral review, the Court finds Artiaga's arguments regarding actual innocence

9

are irrelevant to his motions to add *Blakely* claims to his petition since Artiaga's conviction was final before *Blakely* was decided, as discussed below.

## B.  Petitioner's Second Objection

Artiaga next objects to the Magistrate's statement that Artiaga raised the issue of "'actual innocence,' in a situation where Artiaga admitted that he had pled guilty to the offenses charged." (Doc. No. 39, p. 2). Artiaga's objects to this statement because he claims: (1) it shows the magistrate "factually gives the state court judgments a Presumption of Correctness [to] which they are not entitled"; and (2) the state court lacked subject-matter jurisdiction, and therefore his guilty plea is invalid.

The Court first notes that, though the Magistrate mentioned Artiaga's guilty plea in describing the context of his argument, the Magistrate did not rely on the fact that Artiaga pled guilty in denying leave to amend on the basis of "actual innocence." As stated above, Artiaga argued that his "actual innocence" was reason to excuse any procedural bar to the addition of a *Blakely* claim, permitting him to amend under *Dietz*. However, as explained elsewhere in this opinion, the Magistrate correctly rejected Artiaga's arguments relating to "actual innocence" on grounds other than the fact that he pled guilty. Specifically, the Court concludes above that actual innocence does not abrogate the rule that *Blakely* and *Foster* do not apply retroactively on collateral review, and concludes below that, in any event, Artiaga has not presented "new" and "reliable" evidence of his actual innocence. In sum, the validity of Artiaga's guilty plea – while relevant to his underlying petition – is not relevant to his motion to amend that petition to add a *Blakely* claim. However, for the sake of clarity, the Court will briefly address Artiaga's arguments regarding his guilty plea.

### 1. State Court Findings of Fact

10

Artiaga first argues that the state courts' "judgments and findings of fact" should have no presumptions of correctness, because he meets the exceptions in "28 § 2254 (a)(1-7)." (Doc. No. 40, p. 2). The Court supposes Artiaga refers to the former 28 U.S.C. § 2254(d)(1)-(7). Because this code section was repealed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996) ("AEDPA"), Artiaga's argument is without merit. The cited code sections on which Artiaga relies were repealed by Congress more than four years before Artiaga plead guilty to the charges in Ottawa County. Furthermore, the current version of § 2254(e)(1) states:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1) (2000). Thus, this Court must presume that state court factual determinations are correct unless the petitioner rebuts that presumption with clear and convincing evidence. *See also Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998) (noting the AEDPA requires heightened respect for state factual findings).

Artiaga refers the Court to his traverse, (Doc. No. 25), for an explanation of which state court "findings of fact" he believes the Magistrate improperly presumed to be correct. Artiaga claims the trial court, without adequately making a determination of the facts, overruled his claim that his legal counsel failed to inform him that he could withdraw his guilty plea after being ordered by the judge to do so. *Id*. at ¶¶ 47-72. Artiaga also alleges he did not receive a full and fair plea hearing and that his counsel was not allowed to explore facts of Artiaga's innocence at the withdrawal hearing. *Id*. Artiaga further alleges that his due process rights were violated because he did not receive fair and impartial court proceedings by an impartial judge. *Id*.

11

Whatever the merits of these allegations, none of these allegations constitute a state court's "determination of factual issues" under 28 U.S.C. § 2254(e). "Factual issues" for purposes of § 2254(e) are defined as "basic, primary, or historical facts: facts in the sense of a recital of *external* events and the credibility of their narrators." *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000) (internal quotations omitted) (emphasis added). The offering or acceptance of a guilty plea are not factual issues. Artiaga has identified no factual issue that the Magistrate presumed to be correct nor cited to clear and convincing evidence that the state court incorrectly determined any factual issue.

*2. State Court Subject-Matter Jurisdiction*

Artiaga next argues his guilty plea was invalid because the Ottawa County Court of Common Pleas lacked subject-matter jurisdiction and therefore he did not admit to the charged conduct. (Doc. No. 40, p. 2). Artiaga bases this claim on two separate arguments. First, he claims that he pled guilty to conduct that was not a crime, and therefore, under *United States v. Andrade*, 83 F.3d 729 (5th Cir. 1996), and *United States v. Barboa*, 777 F.2d 1420, 1423 (10th Cir. 1985), the trial court lacked jurisdiction. Second, he claims that the trial court failed to sentence him within a reasonable time. The Court addresses each argument in turn.

*a. Artiaga's Conduct*

In *Andrade*, the Fifth Circuit stated that a guilty plea typically waives all non-jurisdictional defects but that this rule is misplaced where an intervening law establishes that defendant's actions do not constitute a crime and thus the defendant is actually innocent of the charged offense. *Andrade*, 83 F.3d at 731. The defendant in *Andrade* sought to vacate his guilty plea on the ground that an intervening Supreme Court decision rendered the factual basis of his plea insufficient to support his conviction. Because that intervening Supreme Court case applied

12

retroactively on direct appeal, the court vacated the defendant's conviction and sentence, and remanded the matter to the district court. *Id*. at 731-32.

In *Barboa*, the court stated that a guilty plea does not bar a claim that a defendant may not "constitutionally be convicted in the first instance, no matter how validly his factual guilt is established." *Barboa*, 777 F.2d at 1423 (internal quotation omitted). The court further explained that if a defendant pleads guilty to something that was not crime, "he is not now precluded from raising this jurisdictional defect . . . ." *Id*. The appellate court remanded defendant's case for an evidentiary hearing to determine a question of fact. *Id*.

Again referring the Court to his traverse for explanation, Artiaga claims that, as to one count of the indictment, he pled guilty to conduct which is not a crime:

> Petitioner was charged on count [two] of his indictment with Contributing to the delinquency of a minor, however, ORC 4301.69(E) States it is not a crime for a parent to allow their own child to consume, or to furnish alcohol to them, rendering the petitioner "actually innocent of this charge[]" and depriving the trial court of subject matter jurisdiction.

(Doc. No. 25, ¶ 68).

Artiaga cites to no intervening law applying retroactively to his case that makes his actions not a crime under *Andrade*. And whether Artiaga potentially has a valid argument under *Barboa* is not for this Court to decide, for several reasons. First, as the Court explained above, the validity of Artiaga's guilty plea as to Count Two is irrelevant to his motion to amend. Second, Artiaga's Traverse provides that paragraph sixty-eight "is not a claim for relief but shows the exception of [28 U.S.C.] § 2254(d)(4)," *id*. at ¶ 66, which the Court has explained was repealed ten years ago and does not apply in any event, because Artiaga has not identified "findings of fact" – as opposed to legal conclusions – of the state court to which this Court should not defer.

   *b. Reasonable Time*

13

Artiaga's second argument challenging the trial court's subject-matter jurisdiction is that the trial court lacked jurisdiction to sentence him because the "court failed to sentence him within [fifteen] days after a finding of guilt or receipt of pre-sentence investigation report." (Doc. No. 25, ¶ 69). Artiaga cites Ohio Rule of Criminal Procedure 32(A)(1), Ohio Superintendence Rule 39(B)(4), and *State v. Brown*, 786 N.E.2d 492 (Ohio Ct. App. 2003), to support this argument. He further alleges that his lack-of-subject-matter-jurisdiction claims represent facts showing exceptions to the former 28 U.S.C. § 2254. This later argument is without merit because the § 2254 exceptions have been repealed and because subject-matter jurisdiction is not a factual issue.

Ohio Superintendence Rule 39(B)(4) states, "the court shall impose sentence or hold a sentencing hearing with all parties present within fifteen days of the verdict or finding of guilt or receipt of a completed pre-sentence investigation report . . . ." Ohio Sup. R. 39(B)(4). Ohio Rule of Criminal Procedure 32(A) states that a sentence "shall be imposed without unnecessary delay." Ohio Crim. R. 32(A). In *Brown,* the Seventh Appellate District Court held that "'the time of pronouncing sentence is within the discretion of the trial court, and a delay for a reasonable time does not invalidate the sentence.'" *Brown*, 786 N.E.2d at 495 (quoting *Neal v. Maxwell*, 192 N.E.2d 782, 784 (Ohio 1963)). *Brown* also holds that "since *Neal* stands for the proposition that a reasonable delay does not invalidate a sentence, we must infer that an unreasonable delay does invalidate a sentence. The appellate courts which have dealt with this issue . . . have uniformly concluded that any delay in sentencing must be reasonable in order to be valid." *Id*. Thus, a "trial court has no jurisdiction to render a sentence" when there has been an "unreasonable delay" in sentencing. *State v. Johnson*, No. CA2002-07-016, 2003 Ohio App. LEXIS 5603, at *8-10 (Ohio Ct. App. Nov. 24, 2003) (holding defendant's failure to appear at sentencing hearing did not justify the eighty-month delay in sentencing him); *see also State v. Barklay*, No. 95 CA 70, 1996

14

Ohio App. LEXIS 937 *5-6 (Ohio Ct. App. Mar. 15, 1996) (holding a sentencing delay of nearly six months was not unreasonable); *City of Warren v. Potts*, No. 95-T-5216, 1995 Ohio App. LEXIS 5724, at *5-7 (Ohio Ct. App. Dec. 22, 1995) (holding trial court lost its jurisdiction to sentence appellant after unjustified sentencing delay of more than six months which was held to be unreasonable); *State v. Tucker*, No. 88AP-550, 1989 Ohio App. LEXIS 1635, at *10 (Ohio Ct. App. May 2, 1989) (holding it was unreasonable to delay sentencing for more than six months without any additional reasonable justification, even though the defendant failed to appear at a sentencing hearing); *Willoughby v. Lukehart*, 529 N.E.2d 206, 207 (Ohio Ct. App. 1987) (holding "unjustified and lengthy delay" of twelve months between conviction and sentencing deprived the trial court of jurisdiction to impose a sentence against appellant).

Artiaga plead guilty on April 3, 2001. (Doc. No. 15, Ex. 2). On April 9, 2001, a pre-sentence investigation was ordered and a sentencing hearing was scheduled for May 21, 2001. (Doc. No. 5, Ex. 3). Artiaga was actually sentenced on June 28, 2001. *See* (Doc. No. 15, Ex. 4). In light of the above-cited case law, this Court does not find the less than three-month delay in Artiaga's sentencing to be unreasonable.

Furthermore, the Rules of Superintendence adopted pursuant to Section 5(A)(1), Article IV, of the Ohio Constitution are "strictly internal administrative guidelines and bestow no enforceable rights in favor of criminal defendants." *State v. Campbell*, No. 1948, 1991 Ohio App. LEXIS 1875, at *3 (Ohio Ct. App. Apr. 24, 1991); *see also State v. Smith*, 354 N.E.2d 699, 707 (Ohio Ct. App. 1976) ("The Rules of Superintendence were not intended to function as rules of practice and procedure."); *State v. Gettys*, 360 N.E.2d 735, 737 (Ohio Ct. App. 1976) (Rules of Superintendence have "no force equivalent to a statute" and "are purely internal housekeeping rules").

Artiaga's second objection, regarding his guilty plea, is without merit.

*C. Petitioner's Third Objection*

Artiaga next objects to the Magistrate's finding that he has no new evidence of actual innocence. (Doc. No. 40, p. 3). Actual innocence is irrelevant to Artiaga's motion to amend his petition because the court has already concluded that actual innocence is not an exception to the rule that *Blakely* does not apply retroactively. And, although Artiaga argues his case is not final, this Court determines, below, that Artiaga has exhausted his state remedies and that his case was final before *Blakely* was decided.

Furthermore, Artiaga's proposed evidence of actual innocence is not new, reliable evidence. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To be credible, a claim of an actual innocence "requires petitioner to support his allegations of constitutional error with *new reliable evidence* – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995) (emphasis added). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316; *see also Williams v. Bagley*, 380 F.3d 932, 973-74 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005) (holding petitioner was not able to pass through fundamental-miscarriage-of-justice gateway because he did not present new evidence). The Supreme Court recently reaffirmed that the *Schlup* standard is "demanding and permits review only in the 'extraordinary' case," noting that "'in the vast majority of cases, claims of actual innocence are rarely successful.'" *House v. Bell*, No. 04-8990, 2006 U.S. LEXIS 4675, at *36-37 (June 12, 2006) (quoting *Schlup*, 513 U.S. at 324).

16

Artiaga argues he has new evidence of his actual innocence because the trial court learned of the victim's recantation and declaration of his innocence only prior to sentencing and "at no time prior to [his guilty] plea did the [trial] court 'consider' his actual innocence" (Doc. No. 40 p. 3). He states that "[t]he court held no hearings to adjudicate any such assertion nor inquire of the alleged victim as to her recantation," and that "[t]he mere fact the trial judge ordered Artiaga's attorney to offer Artiaga a chance to withdraw his guilty plea IMPLIES THE TRIAL JUDGE FOUND MERIT TO ARTIAGA'S ACTUAL INNOCENCE." *Id*. In addition, Artiaga claims to have new evidence of actual innocence in the form of "numerous" affidavits from the alleged victim "sworn to on or after Dec[.] 10, 2001, after Artiaga's plea [and] sentencing," swearing to his innocence, which he believes constitutes new evidence of his innocence. *Id*.

The record shows that prior to Artiaga's sentencing, the sentencing judge was aware of the victim's recantations. In a closed-chambers meeting with counsel for both parties he said, "I have been deluged by letters from the victim in this case, and the pre-sentence investigation indicates that the Defendant says he didn't do it, and the victim says he didn't do it, and that he is a wonderful father." (Doc. No. 17, p. 2). At the sentencing hearing the victim testified stating, "I just want to say that my dad is a great dad and if anything happens to him today, I don't know if I will be able to live my life. I want him to come home so I can give him his Father's Day card and finally live a happy normal life." *Id*. at 18. The record also shows that the trial judge was not only aware of the victim's letters but also considered what influence they should have on sentencing prior to announcing Artiaga's sentence. *Id*. at 3, 20.

The record further shows the trial judge considered evidence of the victim's recantation during a hearing on Artiaga's motion to withdraw his guilty plea. (Doc. No. 19, p. 10-14). During the hearing, the victim testified that she had made statements to the police and hospital personnel

17

about what her father had done to her, and later that day on the way home from the hospital when she was alone with her mother, and not before, she said those things did not happen. *Id*. at 11-14.

Evidence that the victim had recanted her testimony was presented to the trial judge, and he both received and considered it prior to sentencing. Such evidence, and its renewal in the form of later affidavits, is not new evidence as required under *Schlup*. Although one circuit court has interpreted *Schlup*'s "new" evidence standard to incorporate both "newly presented" and "newly discovered" evidence, *Griffin v. Johnson*, 350 F.3d 956, 962-63 (9th Cir. 2003), neither of these alternative definitions helps Artiaga because the victim's recantation was known by the trial judge and the parties prior to sentencing and prior to the hearing on Artiaga's motion to withdraw his guilty plea. Artiaga's proposed evidence of his actual innocence is not "new."

Furthermore, the victim's recantation of her original testimony is not reliable evidence of actual innocence. Recanting affidavits and witnesses are generally "viewed with extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991); *see also*, *Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005), *cert. denied sub nom Allen v. Brown*, 126 S. Ct. 134 (2005) ("'recantation testimony is generally considered exceedingly unreliable'") (quoting 58 Am. Jur., *New Trial* § 345). This suspicion "is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon, particularly when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story." *United States v. Rouse*, 410 F.3d 1005, 1009 (8th Cir. 2005) (internal quotations omitted). One scholar has written:

> After the child has disclosed the incident, it is not unusual for the child to deny later that the abuse occurred. Child victims of sexual abuse are frequently influenced by the father and other family members to retract or recant their story so that family life will return to 'normal.'

18

Elaine R. Cacciola, Comment, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases*, 34 UCLA L. Rev. 175, 188 (1986).

Courts agree with these conclusions. *See e.g.*, *United States v. Provost*, 969 F.2d 617, 621 (8th Cir. 1992) ("Recantation is particularly common when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story."); *Myatt v. Hannigan*, 910 F.2d 680, 685 (10th Cir. 1990) ("[T]he child's recanting of her statement to family members is not atypical in sex abuse cases."); *State v. Tharp*, 372 N.W.2d 280, 282 (Iowa Ct. App. 1985) (In intrafamily abuse cases "where families are torn apart, there is great pressure on the child to 'make things right.'"); *State v. Cain*, 427 N.W.2d 5, 8 (Minn. Ct. App. 1988) (Recantation is a "frequent characteristic of child abuse victims."); *State v. Gallagher*, 554 A.2d 221, 225 (Vt. 1988) (There is "high probability of a child victim recanting a statement about being abused sexually.").

Scholars, beginning with Roland Summit in 1983, have developed the concept of "Child Sexual Abuse Accommodation Syndrome," ("CSAAS"), to describe the signs and symptoms shown by child victims: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted and unconvincing disclosure; and (5) retraction. *See* Veronica Serrato, Note, *Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses*, 68 B.U.L. Rev. 155, 159 n. 24 (1988) (citing Roland Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 177, 181-82 (1983)). Summit's fifth category, retraction, has been summarized in this way: "If disclosure caused disruption in the victim's life, the victim may recant an earlier story. Beneath anger and impulsive disclosure, there is ambivalence and guilt for failing to preserve the status quo. The victim's contact with protective workers and legal

intervention is combined with conscious and unconscious pressure from her family to return to normal, often resulting in the child's retraction." *Id.*

Regarding the existence of CSAAS, a research study supports the concept of retraction as a recognized phenomenon in child sexual abuse cases, finding that while twenty-two percent of children reporting abuse eventually recanted their allegations, ninety-three percent of these victims later reaffirmed that the abuse had occurred. Michele Meyer McCarthy, Note, *Admissibility of Expert Testimony on Child Sexual Abuse Accommodation Syndrome in Kentucky*, 81 Ky. L.J. 727, 731-32 (1993). Furthermore, the Supreme Court has cited to Summit's CSAAS research to support findings that "young victims often delay reporting sexual abuse because they are easily manipulated by offenders in positions of authority and trust, and because children have difficulty remembering the crime or facing the trauma it can cause." *Stogner v. California*, 539 U.S. 607, 649 (2003) (internal quotation omitted) (The Court indicated the findings were "amply" supported by two empirical studies: Summit, *Abuse of the Child Sexual Abuse Accommodation Syndrome*, 1 J. of Child Sexual Abuse 153, 156-163 (1992); and Lyon, *Scientific Support for Expert Testimony on Child Sexual Abuse Accommodation*, Critical Issues in Child Sexual Abuse 107, 114-120 (J. Conte ed. 2002)).

In his traverse, (Doc. No. 25), Artiaga introduces into the record copies of some writings from the victim in which she recants her original testimony and asserts her father's innocence. The weight of Artiaga's actual innocence claim rests entirely with the recanted testimony of his victim. The Court is sensitive to the highly personal nature of the victim's writings. The Court feels it is sufficient to quote only portions of the first two writings on which Artiaga relies to show that it does not find the recanted testimony to be reliable evidence of actual innocence in light of the case law and research cited above.

20

The victim completed handwritten responses to questions on a "Victim Impact Statement" form, indicating she was 12-1/2 years old at the time. The victim wrote she was feeling "very down and sad" because her family "is not the same." (Doc. No. 25, Ex. C). "It has been nearly six months since I have spoken with my dad and a girl my age, well, <u>any</u> age needs my [] dad, and therefore, I feel like I am missing a big part of my life." *Id*. She also indicated changes in her family affected her at school. "Basically, when my friends talk to me about their dad's [sic] and family, I feel . . . . . . left out. I can't say that I have a dad, and my family isn't exactly perfect. Still, I wish I could (we could) at least try to be. Truthfully, the <u>ONLY</u> thing that I <u>NEED</u> is to see my dad." *Id*. When asked what she would do to the defendant is she were the judge, the victim wrote, "Let us all live together as a family again." *Id*.

In a June 13, 2001, handwritten letter addressed to the trial judge, the victim again expressed her wish that her Dad "would be back home," and her "chance to be with him again." (Doc. No. 25, Ex. D). She expressed her desire "to do something to help him." *Id*. She also apologized to the judge for what had happened and wrote she "hate[d] the thought of going to court again" because it "scares [her] so much there." *Id*.  She wrote of talking with her Mom the night before about her father and concluded her letter: "I pray everyday that he'll be able to come home. Please, help us become a family again. Help save a life. Because <u>I</u> would give up everything that <u>I've</u> got for my family." *Id*.

Finally, as stated above, the victim stated at Petitioner's sentencing hearing: "I just want to say that my dad is a great dad and if anything happens to him today, I don't know if I will be able to live my life. I want him to come home so I can give him his Father's Day card and finally live a happy normal life." (Doc. No. 17, p. 18).

After reviewing the circumstances surrounding the victim's recantation, statements made by the victim, and the legal and scientific authority concerning child victims of sexual abuse, the Court does not find the victim's recantation of her testimony to be reliable evidence of Artiaga's actual innocence. Among influencing factors in this case, the Court notes that the perpetrator in this case was the victim's father and was in a position of trust; the potentiality that the victim's thoughts and understanding of the incident could be influenced by close family members; that a significant disruption occurred in the victim's life after her original testimony to authorities; that she experienced pain or guilt for failing to preserve the status quo in her family; that she desired normalcy in her family life like her peers at school; and that she suffered fear or great anxiety about appearing in court. The victim's statements that her father is innocent is not new reliable evidence to support a claim of actual innocence.

Once a petitioner has presented new reliable evidence, the *Schlup* standard next requires a petitioner to show the habeas court that it is more likely than not that "no reasonable juror" would have convicted him. *Schlup*, 513 U.S. at 329. "If the court finds that even one juror might reasonably vote to convict, the court must find that the petitioner has failed to establish his actual innocence." *Doe v. Menefee*, 391 F.3d 147, 173 (2d Cir. 2004). Such an inquiry requires a habeas court to make a "holistic judgment about all the evidence," including "old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, No. 04-8990, 2006 U.S. LEXIS 4675, at *36, 39 (June 12, 2006) (internal quotations omitted). However, an inquiry into whether any reasonable juror would have voted to convict Artiaga in light of all the evidence is unnecessary here since the Court finds Artiaga has failed the present new reliable evidence to support his actual innocence claim.

22

*D. Petitioner's Fourth Objection*

Artiaga next objects to the Magistrate's finding that Artiaga exhausted his state remedies and that his conviction was final in 2003, before *Blakely* was decided on June 24, 2004. Artiaga contends that the Magistrate overlooked facts and maintains that his conviction is not final because the state court lacked subject-matter jurisdiction and because his case was tainted with due process violations. Artiaga relies on *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 299 (6th Cir. 2005), which holds that "[w]here a federal court finds that a state-court decision was rendered in the absence of subject-matter jurisdiction or tainted by due process violations, it may declare the state court's judgment void *ab initio* and refuse to give the decision effect in the federal proceedings."

This Court has already determined that the Ottawa County Court of Common Pleas had subject-matter jurisdiction to indict and sentence Artiaga.

Due process violations did not taint the decisions in Artiaga's state court proceedings. Artiaga alleges that where a petitioner can show a "*Blakley* 6th Amend[ment] violation in his State judgment, he has shown a Due process violation and this court may declare the State's judgment . . . VOID" (Doc. No. 35, p. 2). This assertion of law is incorrect. "'Due process' is a flexible concept that varies according to the situation." *Sharp v. Lindsey*, 285 F.3d 479, 488 (6th Cir. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). The essential requirements of due process are notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id*. The essence of due process is different from the Sixth Amendment's guarantee of a right to trial by jury. During his state court proceedings, Artiaga was given notice of the charges against him and an opportunity to

23

respond to those charges. The argument that a Sixth Amendment violation is also a due process violation is unsound. If *Blakely* Sixth Amendment-type violations amounted to due process violations that rendered a case not final, the courts' holdings that *Blakely* is not applicable on collateral review could never be true – *Blakely* would always be applicable – and would therefore be rendered meaningless. Artiaga has identified no due process violations that tainted his case.

Additionally, because the Court finds that *Blakely* does not apply retroactively to Artiaga's state court proceedings, which were otherwise final when *Blakely* was decided, the state court proceedings could not have been tainted with due process violations by virtue of *Blakely*'s Sixth Amendment holding, and therefore the state court's judgment is not void *ab initio*.

### E.  Petitioner's Fifth Objection

Artiaga next objects to the Magistrate's finding that *Blakely* is not applicable to Artiaga's case on collateral review. (Doc. No. 40, p. 4). Artiaga asserts his case is not final because the state trial court lacked subject-matter jurisdiction and because he raised a Sixth Amendment violation argument either in state court or in his petition based on *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

The Court has already determined the state trial court did not lack subject-matter jurisdiction. In addition, Artiaga fails to explain and the Court fails to see how his prior invocation of *Apprendi* renders *Blakely* applicable to his case now.

### F.  Petitioner's Sixth Objection

Artiaga next asserts that the Magistrate erred generally by not allowing him to amend his petition although the Ohio Supreme Court has applied *Blakely* to Ohio's sentencing scheme, in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), making Artiaga's sentence therefore unconstitutional because he was sentenced beyond the minimum sentenced allowed. (Doc. No. 40, p. 4).

24

This objection argues the merits of Artiaga's *Blakely* claim, and does not provide a reason to apply *Blakely* or *Foster* retroactively to his case now on collateral review.

### G.  Petitioner's Seventh Objection

Artiaga's last objection is that the Magistrate erred in not allowing him to amend his petition because respondent waived all "defenses and objections" when respondent did not respond to Artiaga's motions to amend. (Doc. No. 40, p. 4). Artiaga therefore believes respondent admitted all averments in his motions to amend under Habeas Rule 11 and Federal Rule of Civil Procedure 8(d). Artiaga also argues the Magistrate erred by raising opposing arguments *sua sponte* in the order denying Artiaga's motion for reconsideration.

Artiaga's arguments are without merit. Habeas Rule 11 states: "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." 28 U.S.C. foll. § 2254 R. 11. Federal Rule of Civil Procedure 8(d) states: "Averments in a *pleading* to which a responsive *pleading* is required, other than those as to the amount of damage, are admitted when not denied in the responsive *pleading*. Averments in a *pleading* to which no responsive *pleading* is required or permitted shall be taken as denied or avoided." Fed. R. Civ. P. 8(d) (emphasis added). Rule 8(d) applies to pleadings, not motions. "Pleadings" under the Federal Rules of Civil Procedure are exclusively the complaint, an answer, and in some cases a reply. Fed. R. Civ. P. 7. The "original pleading" in a habeas proceeding is the original habeas petition. *Gibson v. Wolfe*, No. 2:04-cv-272, 2006 U.S. Dist. LEXIS 30082 at *14 (S.D. Ohio Apr. 17, 2006). Because Artiaga's motions to amend his original habeas petition are not "pleadings" – neither is an original pleading, an answer, or a reply – respondent was not required to reply to Artiaga's motions and therefore did not waive "all defenses and objections" as Artiaga claims. Furthermore, the Magistrate did not err in raising

25

"defenses" *sua sponte* in his denial of Artiaga's motion to amend. The "grant or denial of an opportunity to amend is within the discretion of the District Court," *Foman v. Davis*, 371 U.S. 178, 182 (1962), and a Magistrate does not err in explaining his or her reasons for doing so.

### IV. Futility of Amendment

Federal Rule of Civil Procedure 15(a), applicable to habeas proceedings under Habeas Rule 11, promotes a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987). However, a federal court may deny a motion to amend when amendment would be futile. *Foman*, 371 U.S. at 182; *Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998). The Sixth Circuit recently affirmed a district court's order denying a motion for leave to amend on grounds of futility. *Wiedbrauk v. Lavingne*, Case No. 04-1793, 2006 U.S. App. LEXIS 12283, at *25 (6th Cir. May 17, 2006) (not recommended for full-text publication).

Granting Artiaga's motion to amend his petition to add *Blakely* claims would be futile. *See United States. v. Robertson*, No. Cv. No. 04-1099-T/An, Cr. No. 00-10010-T, 2006 U.S. Dist. LEXIS 19412 at *5 (W.D. Tenn. Apr. 13, 2006) (denying motion to amend or supplement habeas petition brought under 28 U.S.C. §2255 with *Blakely* and *Booker* claims because amending would be futile since *Blakely* and *Booker* do not apply retroactively to cases on collateral review).

### V. Artiaga's Motions to Dismiss and Strike

Artiaga moves to dismiss Respondent's response to his objections, claiming that the habeas rules do not allow for a response and that respondent has waived the right to defend against his claims by failing to respond to his original motions to amend. Artiaga is incorrect on both counts.

26

Habeas Rule 11 provides that the Federal Rules of Civil procedure govern habeas cases. Those rules provide that where a Magistrate Judge is assigned to hear a prisoner petition, a party may file objections to the Magistrate's recommended disposition within ten days, and that, in turn, "[a] party may respond to another party's objections within 10 days after being served with a copy thereof." Fed. R. Civ. P. 72(b). The Court has already addressed and dismissed Artiaga's second argument, concluding above that Artiaga's motions are not pleadings to which non-response amounts to waiver.

Artiaga also moves to strike Respondent's response because: (1) it is actually a third answer/return of writ, not permitted by rule; (2) Respondent relies on "NON-credible and/or dubious Authorities/information," including a study by jones and McQuiston, a case Artiaga believes he has distinguished, "out of State" and non-federal cases, a case that is improperly cited, and arguments it has already made; (3) Respondent incorrectly argues that the trial court rejected the victim's recantation; (4) Justice O'Connor "strongly implie[d]" in her *Blakely* dissent that the case should apply on collateral review; and (5) the trial court lacked subject-matter jurisdiction. None of these reasons are sufficient to strike the response. The response is permitted by Rule 72(b), and the Court is capable of weighing the credibility and persuasiveness of authorities and of interpreting the trial court's statements, and the import of Justice O'Connor's dissent. Finally, the Court has addressed the subject-matter jurisdiction argument, at length, above.

Artiaga also moves to strike the supplemental authority that the Respondent filed, because: (1) Respondent is trying to raise a new defense; (2) the new authority is unpublished; (3) the new authority affirms the district court on an alternative ground; and (4) the new authority is only days old and may be appealed or reconsidered. None of these reasons suffice to strike the supplemental authority: the case is not cited for a new proposition, merely one for which Respondent previously

27

relied on cases from other circuits for; the Court is capable of ascribing the unpublished case the appropriate weight; the fact that the case may be appealed is irrelevant. In any event, the Court has not relied upon the supplemental authority.

Artiaga's motions to strike are denied.

## VI. Conclusion

The Court adopts the Magistrate's order (Doc. No. 39) denying Artiaga's motion for reconsideration of his motions to amend his habeas petition to add *Blakely*-based claims. The Court denies Artiaga's motions to strike (Doc. Nos. 45 & 47).

IT IS SO ORDERED.

<u>S/*David A. Katz*</u>
UNITED STATES
DISTRICT JUDGE